UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHRISTOPHER WARREN FLETCHER,**

    **Plaintiff,**

v.                                                                             **Case No. 8:19-cv-1476-T-23AAS**

**ANDREW SAUL, Commissioner,**
**Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

    Christopher Warren Fletcher requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for social security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, the parties' joint memorandum, and the Commissioner's notice of supplemental authority, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

    Mr. Fletcher applied for SSI and alleged disability beginning on March 8, 2016. (Tr. 81, 211). Disability examiners denied Mr. Fletcher's application initially and after reconsideration. (Tr. 100, 111). Mr. Fletcher then requested a hearing before an ALJ and, on June 1, 2018, the ALJ concluded Mr. Fletcher was not disabled. (Tr. 10–18).

1

The Appeals Council denied Mr. Fletcher's request for review, making the ALJ's decision final. (Tr. 1). Mr. Fletcher seeks judicial review of the Commissioner's final decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Background

Mr. Fletcher was thirty-five years old on his alleged onset date and the date he applied for disability benefits—March 8, 2016. (Tr. 17). Mr. Fletcher completed tenth grade and has past work experience as a stevedore. (Tr. 17, 42).

### B.   Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1]  20 C.F.R. § 416.920(a).  First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. *Id.* at § 416.920(b).  Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, he has no severe impairment and is not disabled. *Id.* at § 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected").  Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. 20 C.F.R. § 416.920(d).  Fourth, if

---

[1]  If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 416.920(a)(4).

[2]  Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 416.910.

a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing work that exists in the national economy, he is not disabled. *Id.* at § 416.920(g).

The ALJ determined Mr. Fletcher did not engage in substantial gainful activity since March 8, 2016 (the date of the application and disability onset). (Tr. 12). The ALJ found Mr. Fletcher had these severe impairments: diabetes mellitus, with peripheral neuropathy; degenerative joint disease of the knees; peripheral artery disease; tinea pedis and related foot ailments; Gitelman syndrome; gastroparesis; hypertension; obesity; mood disorder/depression; and anxiety. (*Id.*). But, the ALJ found none of Mr. Fletcher's impairment or any combination of his impairments meet or medically equaled the severity of an impairment included in the Listings. (Tr. 13).

The ALJ found Mr. Fletcher had an RFC to perform light work.[4] (Tr. 13). Specifically, Mr. Fletcher can:

---

[3] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. 20 C.F.R. § 416.945(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work,

> [L]ift 20 pounds occasionally and ten pounds frequently, stand/walk six hours per day, and sit six hours per day. [Mr. Fletcher] can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. [Mr. Fletcher] can occasionally reach overhead. He must avoid hazardous machinery and heights. [Mr. Fletcher] is limited to simple, routine, repetitive tasks. He can handle ordinary and routine changes in work settings or duties. [Mr. Fletcher] cannot perform fast-paced production or quota-driven work, such as that performed on an assembly line. He can have occasional interaction with the public, coworkers, and supervisors. Finally, [Mr. Fletcher] can maintain attention and concentration for two hours, but then requires a ten-minute break.

(Tr. 13–14).

Based on these findings, the ALJ decided Mr. Fletcher could not perform his past relevant work. (Tr. 17). The ALJ then determined Mr. Fletcher could perform jobs that exist in significant numbers in the national economy, specifically as a mailroom clerk, laundry sorter, and merchandise marker. (Tr. 17–18). Thus, the ALJ concluded Mr. Fletcher was not disabled since the March 8, 2016 application date. (Tr. 18).

### III.   ANALYSIS

#### A.   Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402

---

unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

4

U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The U.S. Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Mr. Fletcher raises four issues on appeal. First, Mr. Fletcher argues the ALJ failed to analyze properly his mental impairments. (Doc. 15, pp. 11–14). Second, Mr. Fletcher argues the ALJ failed to consider properly his need for frequent restroom breaks in the RFC assessment. (*Id.* at pp. 16–14). Third, Mr. Fletcher argues the

ALJ failed to resolve and investigate inconsistencies between the vocational expert (VE) testimony and the Dictionary of Occupational Titles (DOT). (*Id.* at pp. 21–24). Fourth, Mr. Fletcher argues a new hearing in front of a constitutionally appointed ALJ is required. (*Id.* at pp. 31–35).

### 1. Mental Impairments

Mr. Fletcher argues the ALJ failed to analyze properly Mr. Fletcher's mental impairments by failing to explain his Psychiatric Review Technique (PRT) ratings. (Doc. 15, pp. 11–14). In response, the Commissioner contends Mr. Fletcher had generally unremarkable mental status findings and substantial evidence supports the ALJ's PRT ratings. (*Id.* at pp. 14–16).

When evaluating the severity of a mental impairment at each level of the administrative review process, the adjudicator must follow "a special technique." 20 C.F.R. § 416.920a(a). First, the adjudicator evaluates pertinent symptoms, signs, and laboratory findings to determine whether a claimant has a medically determinable mental impairment(s). § 416.920a(b)(1). Second, the adjudicator must evaluate the degree of functional limitation resulting from the impairment, which requires the adjudicator to consider all relevant evidence including "all relevant and available clinical signs and laboratory findings, the effects of [a claimant's] symptoms, and how [a claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." § 416.920a(c)(1). The four broad functional areas to which the adjudicator will assign a rate to articulate the degree of limitation are: activities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation. § 416.920a(c)(3).

The ALJ completed the PRT and found Mr. Fletcher had these limitations: mild limitation in understanding, remembering or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing oneself. (Tr. 13). In making this determination, the ALJ reviewed Mr. Fletcher's mental health records. (Tr. 15). As the ALJ noted, on November 14, 2014, Donna Dillon, ARNP, and Tariq Halim, M.D., completed a medical statement and opined Mr. Fletcher had various mild to moderate or moderate to marked limitations in different areas of mental work-related functioning. (Tr. 755–58). On June 27, 2016, Mr. Fletcher was agitated, had short attention span, his mood was apathetic, and his affect was anxious. (Tr. 545). Mr. Fletcher was cooperative and pleasant; his memory, judgment, and insight were intact. (*Id.*). His intelligence was average, and his thought process was goal-directed and logical. (*Id.*).

The ALJ also collected numerous treatment records showing Mr. Fletcher had no difficulty concentrating, remembering, or making decisions. (*See* Tr. 15, 590, 595, 602, 608, 618, 648, 668). The ALJ stated Mr. Fletcher exhibited "almost no difficulties from a social functioning standpoint, save for signs/symptoms of anxiety." (*Id.*). Although "agitated" at times, Mr. Fletcher was typically cooperative, pleasant, and maintained eye contact. (Tr. 15). Mr. Fletcher can run errands, operate a motor vehicle, prepare light meals, shop, and manage his personal finances. (Tr. 16).

The ALJ accounted for Mr. Fletcher's limitations by limiting him to simple, routine, and repetitive tasks, and requiring a ten-minute break after maintaining attention and concentration for two hours. (Tr. 14). The ALJ completed the PRT and adequately discussed the evidence related to Mr. Fletcher's mental impairments. (Tr. 13–16). The ALJ's evaluation of Mr. Fletcher's mental impairments was proper and supported by substantial evidence.

### 2. RFC Assessment

Mr. Fletcher contends the ALJ erroneously failed to consider in the RFC assessment Mr. Fletcher's need to take frequent restroom breaks. (Doc. 15, pp. 16–14). In response, the Commissioner argues the evidence fails to establish a work-related functional limitation due to Mr. Fletcher's need to use a restroom frequently. (*Id.* at pp. 19–21).

The ALJ does not have to specifically discuss every portion of a medical opinion. *See Newberry v. Comm'r Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014). The ALJ is only required to demonstrate he "considered the claimant's medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Mr. Fletcher's medical records repeatedly deny diarrhea or increased frequency of urination. (Tr. 597, 618, 635, 650, 668). Mr. Fletcher contends that potential side effects from his medications support his need to use a restroom frequently. (Doc. 15, pp. 16–14). However, Mr. Fletcher's treatment records consistently note he tolerated his medications well and had no side effects. (Tr. 591, 603, 609, 629, 634, 635).

Mr. Fletcher cites his subjective complaints to support his need to use the

restroom frequently. The ALJ noted Mr. Fletcher's testimony and reasonably found Mr. Fletcher's statements about the severity of his symptoms not entirely consistent with the record. (Tr. 14–15). Mr. Fletcher further cites his diagnoses to establish a limitation involving a need to use a restroom frequently. (Doc. 15, pp. 16–14). However, a diagnosis, alone, establishes no functional limitation. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005).

The ALJ considered "the entire record" in assessing Mr. Fletcher's RFC and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 13–14). *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 n.3 (11th Cir. 2010) (holding an ALJ's statement that he considered "the entire record" and "all symptoms" reveal he considered all of claimant's impairments). The ALJ is exclusively responsible for formulating the RFC. Here, the ALJ's RFC determination is supported by substantial evidence.

### 3. Consistency Between VE's Testimony and the DOT

Mr. Fletcher contends the ALJ failed to resolve and investigate inconsistencies between the VE's testimony and the DOT. (Doc. 16, pp. 21–24). In response, the Commissioner argues no apparent conflict exists between the VE's testimony that an individual limited to simple, routine, repetitive tasks could perform jobs as a laundry sorter and merchandise marker. (*Id.* at pp. 25–31).

The ALJ posed a hypothetical question to the VE that reflected Mr. Fletcher's RFC, including a limitation to simple, routine, and repetitive tasks. (Tr. 65–66). The

VE testified that a person with Mr. Fletcher's limitations and vocational profile could perform jobs existing in significant numbers in the national economy, such as laundry sorter and merchandise marker. (*Id.*). The DOT describes both jobs as involving a reasoning level of 2. *See* DOT § 361.687-014, 1991 WL 672991 (laundry sorter job); DOT § 209.587-034, 1991 WL 671802 (merchandise marker job).

An ALJ may not rely on a VE's testimony that there is no conflict with the DOT. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). Instead, the ALJ must identify and resolve apparent conflicts between the DOT and VE testimony. *Id.* An "apparent conflict" is "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365.

A limitation to simple, routine, and repetitive tasks does not create an apparent conflict with reasoning level 2 in the DOT. The DOT's definition of reasoning level 2 addresses the type of "instructions" ("detailed but uninvolved") and the number of "variables" ("few concrete variables in or from standardized situations"). DOT, App. C, 1991 WL 688702. These DOT requirements are consistent with the limitation to "simple, routine, and repetitive tasks."[5]

Mr. Fletcher can perform simple duties, he can perform unskilled work, which is the type of work included by the ALJ's RFC assessment and the jobs identified by the VE. (Tr. 13–14, 65–66). Thus, there is no apparent conflict between the capacity

---

[5] The DOT specifically states the jobs at issue involve repetitive or short-cycle work. *See* DOT § 361.687-014, 1991 WL 672991 (laundry sorter job); DOT § 209.587-034, 1991 WL 671802 (merchandise marker job).

for "simple, routine tasks" and reasoning level 2 jobs. *See Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011); *Valdez v. Comm'r of Soc. Sec.*, No. 19-13052, 2020 WL 1951406 (11th Cir. Apr. 23, 2020); *see also Brown v. Comm'r of Soc. Sec.*, No. 6:17-cv-1399-Orl-18-TBS, 2018 WL 4126529, at *5–6 (M.D. Fla. June 13, 2018) (finding no inherent inconsistency between limitation to "simple tasks with little variation" and reasoning level 2 jobs), report & recommendation adopted, 2018 WL 4112833 (M.D. Fla. Aug. 29, 2018).

The VE testified the jobs of laundry sorter jobs and merchandise marker jobs exist in significant numbers in the national economy. (Tr. 66). Thus, this report need not address Mr. Fletcher's argument that the VE's testimony conflicts with the DOT for the mailroom clerk job, which has a reasoning level of 3. *See Bellamy v. Comm'r of Soc. Sec.*, 734 F. App'x 735, 738 (11th Cir. 2018) (concluding one job, with significant numbers, would support a step-five finding).

Because there is no apparent conflict between the VE's testimony and the DOT, *Washington* does not apply and the ALJ did not err in relying on the VE's testimony. Substantial evidence supports the ALJ's reliance on the VE's testimony.

    **4.**  **Appointment of the ALJ**

Last, Mr. Fletcher argues the court should remand his case for a new hearing because the ALJ who decided his disability case was unconstitutionally appointed. (Doc. 15, pp. 31–35). For support, Mr. Fletcher cites *Lucia v. S.E.C.,* 138 S. Ct. 2044, 2051 (2018). (*Id.*). In response, the Commissioner contends Mr. Fletcher forfeited

11

his claim because he did not present this challenge to the ALJ's appointment at any stage of his administrative process. (*Id.* at pp. 35–44).

In *Lucia*, the Supreme Court held the administrative law judges for the Securities and Exchange Commission are "Officers of the United States," and are therefore subject to the Appointments Clause. *Lucia*, 138 S. Ct. at 2055. Because they were not appointed by an entity identified in Article II, § 2, cl. 2, of the United States Constitution, *Lucia* held the administrative decision was "tainted with an appointments violation" and a new hearing was required. *Id.* In reaching this holding, the Supreme Court stated:

> This Court has held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief. Lucia made just such a timely challenge: He contested the validity of Judge Elliot's appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court.

*Id.* (internal citations omitted). The Appointments Clause is "nonjurisdictional" and may be waived or forfeited by failure to timely raise it. *Freytag v. Comm'r*, 501 U.S. 868, 878–79 (1991).

The Eleventh Circuit has yet to decide whether failure to raise the Appointments Clause challenge in the administrative proceedings forfeits the claim, but two pending appeals in the Eleventh Circuit raise this issue: *Perez v. Berryhill*, No. 18-20760-cv-TORRES, 2019 WL 1405642 (S.D. Fla. May 28, 2019), *appeal filed sub nom Perez v. Comm'r of Soc. Sec.*, No. 19-11660 (11th Cir. Apr. 29, 2019); and *Lopez v. Berryhill*, No. 18-20625-cv-TORRES, 2019 WL 1429632 (S.D. Fla. Mar. 29,

2019), *appeal filed sub nom Lopez v. Acting Comm'r of the Soc. Sec. Admin.*, No. 19-11747 (11th Cir. May 3, 2019). The district court decisions within this circuit interpret the Supreme Court's holding in *Lucia* to mean an Appointments Clause challenge must be raised before the ALJ's decision becomes final at the administrative level. *See, e.g.*, *Valle-Roman v. Comm'r of Soc. Sec.*, No. 6:18-cv-1158-Orl-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019); *Rodriquez v. Comm'r of Soc. Sec.*, No. 6:18-cv-1375-Orl-41GJK, 2019 WL 1644243, at *2–3 (M.D. Fla. Feb. 5, 2019), *report and recommendation adopted* 2019 WL 1643299 (M.D. Fla. Apr. 16, 2019); *Gary v. Comm'r of Soc. Sec.*, No. 8:17-cv-2710-T-JSS, 2018 WL 7436496, at *6 (M.D. Fla. Nov. 30, 2018). These cases agree with the "vast majority of courts that have considered this issue" and have concluded the Appointments Clause issue is forfeited if not raised in the administrative proceedings. *See Jones v. Berryhill*, No. 4:18cv503-CAS, 2019 WL 2583157, at *7 n.9 (N.D. Fla. June 21, 2019) (collecting cases from other districts).

Mr. Fletcher did not raise the Appointments Clause challenge at any point during his administrative process. Consistent with current case law of the district courts in the Eleventh Circuit, Mr. Fletcher forfeited his Appointments Clause challenge.

### IV. CONCLUSION

The Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends the Commissioner's decision be **AFFIRMED** and the Clerk be directed to close the file.

**RECOMMENDED** in Tampa, Florida on June 18, 2020.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

### NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.  A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.  11th Cir. R. 3-1.